Green J.
delivered the opinion of the court.
The first question to be considered, is, as to the true construction of the occupant law of 1825, ch. 39, sec. 3.
This act confers a right of occupancy, according to the provisions of the act of 1819, ch. 1, and 1820, ch. 27, on every person who may have been bona fide resident occupants at the time the act passed, and also on all who might become such before the first day of May, 1826. It is contended that this act is to be understood literally, and that if at any time after the passage of the act, and *132 before firsi °f May, 1826, a party shall have been in; possession of vacant land, he became thereby entitled' to a right of occupancy, although he might have abandoned the same the next day.
If this be so, the same individual might have entitled’ himself to a right of occupancy every day, between the passage of the act and the 1st of May, 1826; and although he could appropriate but one, yet as no person could tell which he would choose to prove and appropriate, all other persons must be kept in suspense until his selection should: be made. Again: if this construction be true, no man could be sure that he had a good right of occupancy to the place possessed by him; for some other man may have passed a day on his place previously to his getting possession thereof, and, if the argument be sound, would thereby defeat his right.
The mischiefs and absurdities into which this construction would lead, must not be charged upon the legislature. We are to understand the act as contemplating a possession to be commenced before the first of May, and continued up to that time. Although the latter words are not used, yet that is the sense indicated by the sentence, and any other construction would lead to consequences so absurd and mischievous, that we are not to attribute them to legislative intention. The act of 1826, ch. 7, sec. 1, also illustrates the sense of the act under consideration. In that act, the legislature say, “that all persons who may have settled, and were actually residing upon vacant and unappropriated land, south and west of the Congressional reservation line, on or before the 1st day of May, 1826, may have any quantity, not more than two hundred acres,” &c.
From these considerations it is apparent, that to constitute a right of occupancy by virtue of the act of 1825, the party must continue in possession up to the 1st of May, 1826; the possession on that day conferring the right. It is manifest, therefore, that neither Atkinson nor Crockett *133 had any right of occupancy to the land in question, and that, as the complainant was the only person who was in possession on the 1st day of May, 1826, he alone had a right to enter the land as an occupant. The surveyor general ought to have received the entry of Reese, and to have rejected the other; but instead of doing so, he has permitted another, contrary to law, to acquire a title to the land in dispute. As the complainant had the exclusive right to enter the land, and as the improper interference of the defendants have obstructed him in the attainment of his legal right, the aid of a court of chancery is properly sought to deprive the defendants of their legal advantage thus improperly obtained. Thus far, we agree with the chancellor; but we cannot sustain his view of the right which the defendants are supposed to have acquired by virtue of the agreement between Atkinson and the complainant.
When Atkinson quit work on the house, and abandoned the improvement, it was agreed by complainant that he would take possession of the place, get a title to the land and give Atkinson the one half. But what consideration was there for this agreement, by which to make it obligatory on Reese, the complainant? Atkinson had nothing in the place which was the subject of sale. He had acquired no right of occupancy. He had never been in possession of the place, much less had he continued in possession until a right of occupany was acquired. The contract between him and Resse was, therefore, nudum pactum, and could not be enforced by law. Smith vs. Rankin, (4 Yer. Rep. 1).
This being the case, Crockett took no right by virtue of his contract with Atkinson, and consequently, can have no claim to one half the land. The decree must, therefore, be reversed, so far as it directs a division of the land; and a decree must be entered for-the complainant for the whole tract, charging him with the monies which have been expended in acquiring the title; which amount will constitute a lien on the land.
Decree reversed.